UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

YORAM FINKELSTEIN,                                           :

           Plaintiff,                                  :  05-CV-00392 (RJH)

           -vs-                                          :

JOSEPH MARDKHA and COLORMASTERS,                            :  **NOTICE OF MOTION**
INC., and DIAMOND INNOVATIONS, LLC                          :
                                                            :  Assigned to: Hon. Richard J. Holwell,
           Defendants.                                 :  U.S.D.J
                                                            :

------------------------------------------------------------- x


**PLEASE TAKE NOTICE**, that upon the Affidavit of Jeffrey A. Mitchell, dated June

29, 2006, the exhibits annexed thereto, the referenced accompanying binders captioned *Exhibits*

*In Support of Defendants' Motion For Summary Judgment* and the *Deposition Transcripts in*

*Support of Defendants' Motion for Summary Judgment*, and the accompanying Memorandum of

Law, defendants Joseph Mardkha, Colormasters, Inc., Diamond Innovations, LLC, by their

attorneys, Dreier LLP, move this Court before the Hon. Richard J. Holwell for an Order pursuant

to Fed.R.Civ.P. 56 granting them summary judgment dismissing all claims asserted against them

in the Amended Complaint, entering judgment for defendants thereon, and for such other,

further, and different relief as this Court deems just and proper.

Dated: New York, New York
June 29, 2006

Respectfully submitted,

DREIER LLP

By:
Jeffrey A. Mitchell, Esq.  (JM5323)
Don Abraham, Esq. (DA4145)
*Attorneys for defendants*
*Joseph Mardkha  ColorMasters, Inc., and*
*Diamond Innovations, LLC*
499 Park Avenue
New York, New York 10022
(212) 328-6100

TO:    **PELOSI WOLF EFFRON & SPATES LLP**
Alan Effron, Esq.
*Attorneys for plaintiff*
*Yoram Finkelstein*
233 Broadway
22nd Floor
New York, New York  10279
(212) 334-1082

56.1 Statement

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

YORAM FINKELSTEIN,

                Plaintiff,

             -vs-

JOSEPH MARDKHA, COLORMASTERS, INC.
and DIAMOND INNOVATIONS, LLC,

                Defendants.

-------------------------------------------------------------------- x

05-CV-00392  (RJH)

Assigned to: Hon. Richard J.
Holwell, U.S.D.J.

**STATEMENT OF MATERIAL
FACTS PURSUANT TO
LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, defendants submit the following Statement of Material

Facts in connection with their motion for summary judgment as to which there is no genuine issue

to be tried:[1]

## UNDISPUTED FACTS RELEVANT TO THIS MOTION

### A.    The Parties

    1.    Defendant Joseph Mardkha ("Mardkha") is the president and majority

shareholder of defendant Colormasters, Inc. ("Colormasters"), and the owner of defendant

Diamond Innovations LLC ("Diamond Innovations").  (Mar. 3-4, 9-11)

    2.    Plaintiff Yoram Finkelstein ("Plaintiff") is Mardkha's brother-in-law.  (Pl. 34-

38; Mar.20)

    3.    Plaintiff married Mardkha's sister-in-law in June 1998.  (Pl. 34-38; Mar.20)

---

[1] References herein to deposition transcripts include those of plaintiff ("Pl."), Mardkha ("Mar."), Linda Hanson ("Han."), Haim Giladi ("Gil.), Nicki Meir ("Meir"), and Mark (Martin) Haske ("Haske").  Copies of the deposition transcripts are annexed  to the accompanying binder of *Deposition Transcripts*, and copies of other documentary exhibits referenced herein are annexed to the accompanying binder of *Exhibits In Support of Defendants' Motion for Summary Judgment*, all of which are incorporated by reference in the supporting Affidavit of Jeffrey A. Mitchell dated June 29, 2006 ("Mitchell Aff.").  Copies of the Affidavits of Carrie-Ann Colby ("Colby Aff.") and Douglas Weintraub ("Weintraub Aff.") are annexed to the Mitchell Aff.

4.     Mardkha is and has been in the business of manufacturing jewelry, primarily incorporating color gemstones such as rubies, sapphires, and emeralds, since 1985.(Mar. 6-7)

5.     Plaintiff is in the diamond business in Israel.  (Pl.6, 8-11)

6.     Plaintiff has never been employed as a diamond cutter. (Pl. 135-136, 138-141, 298-306)

**B.**     **The Invention**

7.     Mardkha first discussed his concept for the diamond design that underlies this action (the "Diamond") with Linda Hanson, then a senior vice president of Tiffany, in the last quarter of 1998. (Han. 14-23, 91-96)

8.     Mardkha discussed the concept for the Diamond with Linda Hanson in greater detail in January 1999.

9.     Mardkha described his concept for the Diamond as being derived from the way color gemstones have historically been cut. (Mar. 36-37; Han. 14-23, 90-96)

10.    The combination of cuts for the Diamond that Mardkha described to Ms. Hanson was for a cushion shaped girdle, with a brilliant faceted crown (top) and a step faceted pavilion (bottom). (Han. 17)

11.    Plaintiff claims he first thought of creating something new in July or August 1999, at least 9 months after Mardkha had already discussed the concept for the Diamond with Linda Hanson. (Pl. 101-102, 146-148)

12.    The first time the Diamond was cut with the faceting arrangement set forth in paragraph "10" above, the invention was complete.

13.    In July or August 1999, Plaintiff testified that he still had no concrete idea or concept in mind. (Pl. 93-94)

14.    Plaintiff has no corroborating evidence through testimony or documents that he contributed to the conception of the Diamond. (Pl. 93-94, 101-102, 109, 113-116, 139-141, 321-325, 328-331; Ex. "E"; Colby Aff., Gil. 88-89; Meir 43-45)

15.    None of the facet cuts for the Diamond described by Mardkha to Ms. Hanson was new. (Han. 93-94; Pl. 109-110; Haske 119-121, 177; Meir 20-21; Colby Aff.; Weintraub Aff.)

16.    The novelty of the design of the Diamond described by Mardkha was in the combination of existing known cuts – brilliant facets for the crown, step cut facets for the pavilion. (Han. 93-94; Pl. 109-110; Haske 119-121, 177; Meir 20-21; Colby Aff.; Weintraub Aff.)

17.    Any competent diamond cutter could have followed directions to cut a cushion shaped stone with brilliant facets in the crown and step facets in the pavilion. (Pl. 98-100; Meir 20; Haske 123-126; Han. 92-93; Weintraub Aff.)

18.    Plaintiff never worked professionally as a diamond cutter, and he never cut any stone related to the patents. (Pl. 135-136, 138-141, 298-306)

19.    The mechanical act of cutting a diamond does not make the "cutter" an inventor. (Pl. 139-141)

## C.    The Patents

20.    Mardkha is identified as the sole inventor of the Diamond on United States Design Patent No. D467,833, titled "Mixed Cut Diamond" (the "Design Patent"). (Ex. "G")

21.    The Design Patent was issued on December 31, 2002. (Ex. "G")

22.    Mardkha is identified as the sole inventor of the Diamond on United States Patent Application number 2002/0170315 (the "Utility Patent").(Ex. "H")

23.    Most of the three dimensional drawings in the Utility Patent application are the same as those contained in the Design Patent, but written descriptions of different portions of the stone are added in the Utility Patent. (Ex. "G" and "H"; Colby Aff.)

24.    On February 22, 2006, the USPTO sent a Notice of Allowance of the Utility Patent authorizing its issuance (the "Allowance"). (Ex. "I")

25.    Mardkha is also listed as the sole inventor of the Diamond on design patents that have issued in Austria (Pat. No. 49035 issued May 20, 2002), Switzerland (Pat. No. 128625 issued March 27, 2002), Germany (Pat. No. 40201122.3 issued June 13, 2002), France (Pat. No. 667745-667749 issued June 21, 2002) and Great Britain (Pat. No. 3001386 issued May 9, 2002). (Exhibit "B" to Memorandum of Law)

26.    Mardkha is listed as the sole inventor of the Diamond on design patent applications filed in the Benelux countries, Canada, Israel, Italy, and Japan. (Exhibit "B" to Memorandum of Law)

27.    The application for the Design Patent was filed on August 11, 2001, and the application for the Utility Patent was filed on September 10, 2001. (Ex. "G" and "H")

28.    Plaintiff knew about each of the applications before they were filed. (Amended Complaint ¶ 18 (Ex. "A"); Pl. 80-89, 62-72, 204, 279-282)

29.    The patent lawyers who filed the applications for the Design Patent and the Utility Patent (the "Patent Lawyers") were retained and paid for by Mardkha. (Pl. 204-206)

30.    The Patent Lawyers only represented Mardkha and his companies. (Pl. 204-206)

31.    The Patent Lawyers never represented Plaintiff. (Pl. 204-206)

32.    The first time Plaintiff ever claimed to be an inventor of the Diamond was when

he filed the Complaint in this action on or about November 2004. (Pl. 88-89, 283-284)

33.   The Design Patent depicts a three dimensional drawing of the Diamond. Ex. "G")

34.   The Utility Patent sets out claims of inventorship which describe the Diamond. (Ex. "H" and "I"; Colby Aff.)

35.   The United States Patent and Trademark Office ("USPTO") has allowed 55 separate claims in the Utility Patent. (Ex. "I")

36.   Of those 55 separate claims, 5 are what are known as "independent claims", and 50 are what are called "dependent claims". (Ex. "I" and Colby Aff.)

37.   Claims 45 and 54 are two of the independent claims in the Utility Patent which have been allowed by the USPTO in the Allowance. (Ex. "I")

38.   Claims are illustrative of the breadth of the Utility Patent, and state:

> 45. A mixed cut gemstone comprising
> a brilliant cut crown; and
> a step cut pavilion, said step cut pavilion having at least two steps, said first step being closest to the crown and having triangular shaped facets.

*      *      *

> 54. A diamond comprising:
> a girdle cushioned in shape;
> a crown being positioned adjacent the girdle, and
> a step cut pavilion being positioned adjacent the girdle opposite the crown, said pavilion having a first step and a second step, the first step being adjacent the girdle, the first step having more facets than the second step, said first step having exclusively triangular shaped facets.  (Ex. "I")

39.   In or about October 15, 2001, Plaintiff received, reviewed, commented upon, and marked-up a memorandum prepared by the Patent Lawyers (the "Patent Memorandum"), which described the Diamond and the patent application process.")(Ex. "M"; Pl. 80-89)

40.   The Patent Memorandum  identified "Joseph Mardkha" as the sole inventor (Ex.

"M"; Pl. 80-89)

41.    The Patent Memorandum was produced by Plaintiff in response to a discovery demand in this action. (Pl. 80-89)

42.    The copy of the Patent Memorandum produced by Plaintiff contains handwriting that Plaintiff identified as his own. (Pl. 80-89)

43.    Plaintiff never objected to anything contained in the Patent Memorandum, other than to privately to his wife.  (Pl. 84-89)

**D.    The Tiffany License**

44.    In or about October 2002, Tiffany and Company ("Tiffany") exclusively licensed all rights in and to the Diamond described in the Design Patent and the Utility Patent (the "License").(Ex. "K")

45.    Plaintiff knew by January 15, 2002 that Mardkha was in the process of licensing the patent rights of the Diamond to Tiffany.  (Pl. 323-233)

46.    After obtaining the License, Tiffany made the Diamond a centerpiece of its *Legacy* collection. (Ex. "O")

47.    In reliance on the License, Tiffany has invested over $20-million from the last quarter of 2003 through the end of 2004 in the purchase of Diamonds for its *Legacy Collection*. (Ex. "P")

**E.    Business Relationship**

48.    Mardkha decided to have the Diamond cut in Israel to keep his invention from spreading through the New York marketplace.  (Mar. 59)

49.    Plaintiff lives in Israel, and buys and sells diamonds. (Pl. 26-33, Ex. "A" at ¶¶ 3-4; Mar. 65-68)

50.    Following Plaintiff's marriage to Mardkha's sister-in-law, Mardkha began directing some of Colormasters' regular diamond purchases through Plaintiff. (Mar. 20-23, 260-261)

51.    Colormasters also paid Plaintiff a commission of up to 3% for some of its diamond purchases.  (Mar. 23, 258-261; Gil. 11-12)

52.    It is customary in the diamond industry for the seller to pay commission.  (Mar. 23, 258-261; Gil. 11-12)

53.    Between 1998 and 2002, Colormasters paid Plaintiff more than $200,000 for diamond purchases and in commissions.  (Pl. 349-359; Ex. "C")

54.    After the invention was complete, Mardkha had variations of his new design cut to make it more aesthetically pleasing to his eye.  (Pl. 109, 113-116, 321-325, 328-331; Mar. 78-84; Ex. "F")

55.    Mardkha paid for all stones.  (Mar. 78-79; Pl. 135, Ex. "E")

56.    Mardkha directed changes based upon the visual appearance of prototypes. (Mar. 78-82; Ex. "F")

57.    Plaintiff never physically cut any version of the Diamond.  (Pl. 135-136, 138-141)

58.    There was no written agreement between Plaintiff and Mardkha.  (Pl.128-129, 131-132, 410-411)

59.    There was no agreement, oral or in writing, between Plaintiff and Mardkha, to (i) share profits and losses, (ii) allocate partnership or joint venture interests, (iii) provide for respective capital contributions, (iv) establish capital accounts, (v) set a term (length) of a partnership or joint venture, or (vi) establish grounds for removal of a partner or for dissolution.

(Pl.128-129, 131-132, 410-411)

60.    There was no end date to the alleged oral partnership agreement between Plaintiff and Mardkha.  (Pl. 131)

61.    Among the manufacturers considered by Mardkha to manufacture the Diamond were two in Israeli companies with whom Plaintiff was acquainted, Avi Paz Fancy, Ltd. ("Paz") and GNN Diamonds, Ltd. ("GNN").  (P. 62-72; Ex. "N")

62.    Before Mardkha was willing to show the Diamond design to Paz or GNN, he required each to sign a confidentiality/non-disclosure agreement (the "Confidentiality Agreement").  (Ex. "N")

63.    The agreement provided, *inter alia*, that all intellectual property rights in and to the Diamond belonged to Mardkha and his companies.  (Ex. "N")

64.    Plaintiff presented the Confidentiality Agreement to both Paz and GNN, and obtained their signatures thereon. (Pl. 62-72)

65.    Plaintiff did not complain to either Mardkha before or after obtaining the signatures of Paz and GNN about any terms of the Confidentiality Agreement. (Pl. 62-72)

66.    The first time Plaintiff ever communicated in writing that he believed he was an inventor was in the Complaint filed in this action in November 2004.  (Pl. 88-89, 283-284)

67.    Between 1999 and 2005, Plaintiff earned between $10,000 and $20,000, at most, for his work doing what he calls "designing and cutting" diamonds.  (Ex. "D")

Dated: New York, New York
      June 29, 2006

                Respectfully submitted,

                **DREIER LLP**

                By: _____

                  Jeffrey A. Mitchell (JM 5323)
                  Don Abraham (DA 4145)
                  *Attorneys for Defendants*
                  499 Park Avenue
                  New York, New York 10022
                  (212) 328-6100

Mitchell Aff.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

YORAM FINKELSTEIN,                                :
                                                  :
                                                  :    05-CV-00392 (RJH)
                     Plaintiff,                   :
                                                  :    Assigned to: Hon. Richard J. Holwell,
                     -vs-                          :    U.S.D.J
                                                  :
JOSEPH MARDKHA and COLORMASTERS,                  :    **AFFIDAVIT OF JEFFREY A.**
INC.,                                             :    **MITCHELL IN SUPPORT OF**
                                                  :    **MOTION FOR SUMMARY**
                     Defendants.                  :    **JUDGMENT**

------------------------------------------------------------ x

STATE OF NEW YORK    )
                     :  ss.:
COUNTY OF NEW YORK   )

JEFFREY A. MITCHELL, being duly sworn, deposes and says:

1.    I am a partner in Dreier LLP, attorneys for defendants Joseph Mardkha,

Colormasters, Inc., and Diamond Innovations, LLC (collectively "defendants"), and respectfully

submit this affidavit in support of defendants' Motion for Summary Judgment. I have

represented defendants throughout the pendency of this action, and in that capacity, have

personal knowledge of the record in this case, including all documents and testimony given at

deposition. I make this Affidavit based upon that personal knowledge.

2.    Accompanying this Affidavit are two binders; one captioned *Exhibits In Support*

*of Defendants' Motion For Summary Judgment* (the "Exhibit Binder"), and the other captioned

*Deposition Transcripts in Support of Defendants' Motion for Summary Judgment* (the

"Deposition Binder").

3.    The Exhibit Binder contains true and correct copies of documents referenced in

the accompanying Memorandum of Law, all of which are in the record of this case, except the

advertisement shown in Exhibit "O", which was copied from *The New York Times* May 30, 2006 edition.

4.    The Deposition Binder contains true and correct copies of the deposition transcripts of plaintiff Yoram Finkelstien, defendant Joseph Mardkha, and witnesses Linda Hanson, Haim Giladi, Nicki Meir, and Martin Haske (erroneously identified as "Mark" Haske in the transcript).

5.    Also accompanying this Affidavit are the affidavits of Carrie Anne Colby, patent and trademark counsel for Joseph Mardkha, and Douglas Weintraub, the president of William V. Schmidt Co., Inc., a manufacturer for Tiffany and Company of the diamond at issue in this action.

## CONCLUSION

6.    For the reasons set forth in the foregoing papers, as well as in the accompanying Memorandum of Law, defendants respectfully request that their Motion for Summary Judgment dismissing the Complaint be granted in its entirety, and that the Court award such other further and different relief as it deems proper.

JEFFREY A. MITCHELL

Sworn to before me on this
29th day of June, 2006.

Notary Public

**DON ABRAHAM**
**Notary Public, State of New York**
No. 02AB4977529
**Qualified in New York County**
**Commission Expires April 18, 20_0 7_**

Colby Aff.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

YORAM FINKELSTEIN,

              Plaintiff,

            -vs-

JOSEPH MARDKHA, COLORMASTERS, INC.
and DIAMOND INNOVATIONS, LLC,

            Defendants.

------------------------------------------------------------- x

      :   05-CV-00392 (RJH)

      :

      :   Assigned to: Hon. Richard J. Holwell,
      :   U.S.D.J.

      :

      :   **AFFIDAVIT OF CARRIE ANN COLBY**
      :   **IN SUPPORT OF SUMMARY**
      :   **JUDGMENT**

STATE OF NEW YORK   )
                 : ss.:
COUNTY OF NEW YORK  )

      CARRIE ANN COLBY, being duly sworn, deposes and says:

      1.  I was formerly associated with law firm of Ohlandt, Greeley, Ruggerio & Perle

("Ohlandt"), and I am associated with the intellectual property law firm of Lackenbach Siegel

("Lackenbach"). At both firms, I was the attorney responsible for prosecuting the patent

applications for Joseph Mardkha ("Mardkha") that underlie this case. I make this Affidavit in

support of the Motion by defendants in the above-captioned action for Summary Judgment, and

have personal knowledge of the facts and circumstances set forth below.

      2.    Initially, the Court should know that neither Ohlandts, Lackenbach, nor I ever

represented plaintiff Yoram Finkelstein in any capacity. We were retained and paid solely by

Mardkha and his companies, Colormasters, Inc. ("Colormasters") and Diamond Innovations,

LLC ("Diamond Innovations"), to prosecute the subject patents, to assign all rights in and to

them to Diamond Innovations, and to then license all rights to Tiffany and Company ("Tiffany").

I never spoke with plaintiff at all, let alone about the patents. Moreover, he never paid me or my firm anything toward the legal fees and costs incurred during the representation.

A.        **The Patents**

3.  In the spring of 2001, Ohlandt was retained by Mardkha to prosecute two patent applications for a diamond he had created; a design patent and a utility patent for the same design. The website for the United States Patent and Trademark Office ("USPTO") describes the difference between utility and design patents as follows:

> In general terms, a "utility patent" protects the way an article is used and works (35 U.S.C. 101), while a "design patent" protects the way an article looks (35 U.S.C. 171). Both design and utility patents may be obtained on an article if invention resides both in its utility and ornamental appearance. While utility and design patents afford legally separate protection, the utility and ornamentality of an article are not easily separable. Articles of manufacture may possess both functional and ornamental characteristics.

*A Guide To Filing A Design Patent Application*, (http://www.uspto.gov/web/offices/pac/ design/definition.html#difference).

4.  Mardkha had invented a new diamond design, and was looking to obtain the maximum amount of patent protection available. I was the person responsible for gathering the information and preparing all documents necessary to prosecute the patent applications.

5.  The design patent, the simpler of the two applications, only required a three dimensional drawing of the new diamond. The "inventor" of a design depicted in a design patent is the person who first *conceived* of the invention, and then *reduced that invention to practice*. Reduction to practice does not necessarily mean that the inventor created an actual prototype. Only that he worked out the essential elements of the patentable design.

6.  Here, the diamond invented by Mardkha is unique in its general faceting arrangement – not in any specifics of facet angles. Indeed, the utility patent clearly states that it is the "spirit" of the invention, and not the specifics, that are at the heart of the design. (Utility

-2-

{00166101.DOC;}

Patent Application, ¶[0051]) The uniqueness of the patented stone is in its use of brilliant facets in the crown and step cut facets in the pavilion. While neither of those facet cuts is itself unique, that particular crown/pavilion arrangement was never before used in a diamond. The effect is to create a stone with, as the application says, "controlled brilliance", rather than extreme sparkle, thereby showing off depth and clarity.

7. I came to learn during my representation that the concept for the invention came from the world of color gemstones, such as rubies, sapphires, and emeralds. Those gems are often cut in a cushion shape, with a brilliant crown and step pavilion, in order to retain light inside the stone to show off color. The invention is a variation on that historic cut, but adapted to diamonds.

8. The utility patent, protects the same design, but using words and drawings (rather than drawings alone) to show the breadth of the invention. We intentionally made the description broad because the novelty of the invention was not in the specifics of facet angles, but rather, in generally combining a brilliantly faceted crown with a step faceted pavilion. For that reason, claims 45 and 54 generally protect:

> 45. A mixed cut gemstone comprising
> a brilliant cut crown; and
> a step cut pavilion, said step cut pavilion having at least two steps, said
> first step being closest to the crown and having triangular shaped facets.

*     *     *

> 54. A diamond comprising:
> a girdle cushioned in shape;
> a crown being positioned adjacent the girdle, and
> a step cut pavilion being positioned adjacent the girdle opposite the crown, said
> pavilion having a first step and a second step, the first step being adjacent the girdle,
> the first step having more facets than the second step, said first step having
> exclusively triangular shaped facets.

-3-

9.  The Utility Patent application makes clear that the intent is that the patent cover a wide range of possible permutations, and not be limited by any particulars.  Paragraph [0051] of the patent states:

> While only a limited number of embodiments of the invention have been shown and described in detail, there will now be obvious to those skilled in the art many modifications and variations satisfying many or all of the objects of the invention but which do not depart from the spirit thereof as defined by the appended claims.  For example, although there has been shown only a square cut stone, the invention contemplates any straight edged polygon stone. Additionally, although a stone with four pavilion steps has been described, the invention contemplates any plurality of steps combined with the unique first step facet structure herein described.

**B.**     **Invention**

10. From what I am advised, plaintiff confuses the concepts of *patentability* with *marketability.*  Under the patent laws, reduction to practice is not necessary for an invention to be patentable.  An invention need only meet the standards of novelty and  non-obviousness to be patentable.  (35 U.S.C. §§ 103, 103); *See also, Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998)(it is well settled that an invention may be patented even before it is reduced to practice). Thus, the invention here was patentable even before Mardkha had a workable stone.  It was patentable when Mardkha conceived of a stone with a brilliant crown and step pavilion faceting arrangement.  The first time he asked that a stone be cut with that faceting arrangement, using known and established facet cuts that could be performed by someone with ordinary diamond cutting skills, his invention was complete.  Work which followed to make the diamond more beautiful, and hence, more marketable, did not add to the invention – only to its marketability. Unless plaintiff has corroborating proof – which I am told he does not – that the *idea* for this novel faceting arrangement was his, he is not an inventor.

11. I have also reviewed a copy of an expert report of Martin Haske, who I am told is a person plaintiff offered as an expert.  Mr. Haske, who is not a lawyer and has no formal patent

-4-

training, offers supposed legal opinions on what makes a stone patentable. In particular, he alleges that a diamond is only patentable because of its particulars, and not for the general faceting arrangement of the stone. He is wrong. The general facet arrangement is not only the patentable feature of Mardkha's invention, but is generally the patentable feature of most issued patents relating to diamonds. Moreover, while the written description requirement of the patent laws require that a patentee describe the invention with particularity (i.e. facet angles and measurements) such that one skilled in the art can practice the invention (35 U.S.C. 112), the standard of patentability is simply that the invention be novel and non-obvious. [cite] There is no law to support the assertion that "a diamond is patentable only because of its particulars". In fact, such a standard would have a chilling effect on our patent system because inventors would refuse to spend large sums of money for narrowly drawn patents that competitors could freely and legally circumvent by designing around the particulars of a patented idea. The patent system is designed to encourange inventors to disclose their inventions by rewarding them with meaningful limited monopolies, thereby advancing the art. For Mr. Haske to argue otherwise is simply not true, as I am personally familiar with the application process for the subject patents.

## C.    **Independent/Dependent Claims**

12. As do most utility patents, the one underlying this action uses both *independent* and *dependent* claims to describe the invention. The heart of a patent is in its independent claims – those that broadly outline and describe what the inventor created. An independent claim begins with words that do not rely upon any other claim in the patent, such as "a diamond comprising". A dependent claim incorporates by reference an independent claim, and adds certain specifics, which provides certain details to different aspects of the invention.

13. With respect to the underlying diamond, the guts of the patent are set forth in its independent claims. The dependent claims are intended to more particularly describe the version

-5-

of the invention depicted in the drawings, which are part of both the design and the utility patent. However, given the breadth of the independent claims that were allowed by the USPTO, the dependent claims only describe a version of the invention, essentially by way of example, and not every permutation of it.

14. Where the expert report of Mr. Haske misses the mark is in its mistaken belief that the crux of the patent is in the particulars of the dependent claims. In fact, the opposite is true. The patent is in the independent claims, and even without the dependent claims, the invention shown in the drawings which are part of the design and utility patents would still be protected.

_____
CARRIE ANN COLBY

Sworn before me on
this 22nd day of June 2006.

_____
Notary Public

DON ABRAHAM
Notary Public, State of New York
No. 02AB4977529
Qualified in New York County
Commission Expires April 18, 20 07

Weintraub Aff.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

YORAM FINKELSTEIN,

      Plaintiff,

   -vs-

JOSEPH MARDKHA, COLORMASTERS, INC.
and DIAMOND INNOVATIONS, LLC,

      Defendants.

------------------------------------------------------------- x

:    05-CV-00392 (RJH)

:    Assigned to: Hon. Richard J. Holwell,
:    U.S.D.J.

:    **AFFIDAVIT OF DOUGLAS**
:    **WEINTRAUB IN SUPPORT OF**
:    **SUMMARY JUDGMENT**

STATE OF NEW YORK )
       : ss.:
COUNTY OF NEW YORK )

  DOUGLAS WEINTRAUB, being duly sworn, deposes and says:

  1. I am the president of William V. Schmidt Co., Inc. ("Schmidt") in New York City, a manufacturer and supplier of diamonds to the jewelry trade. I make this Affidavit in support of the Motion by defendants in the above-captioned action for Summary Judgment, and have personal knowledge of the facts and circumstances set forth below.

  2. I have been in the diamond business my entire adult life. Schmidt is a company well over 100 years old, run by my late father until his death in 2000, and of which I am the sole owner. I have extensive experience in the business of manufacturing and selling diamonds. Schmidt counts as one of its many clients, Tiffany and Company ("Tiffany"). As a result of that relationship, I have become familiar with the diamond cut that underlies this action, the invention of which is attributed by patents to Joseph Mardkha.

  3. Tiffany regularly orders from us stones to be cut in the shape described in the patents. I can attest to the Court that our company uses no unique equipment to cut the diamonds

in filling those orders, and that there are no unique or novel faceting cuts that we are required to use. In addition, as with all diamonds, no two finished stones are exactly alike – the facet angles often varying from stone to stone, depending on a number of factors, including carat weight, clarity, the nature of the rough material, and issues such as those.

4. Finally, the uniqueness of the patented diamond at issue is in its combination of brilliant facets in the crown, and step facets in the pavilion. I have known Mr. Mardkha for many years, and the idea for the cut derives from the color gemstone industry, where gems such as rubies, sapphires, and emeralds have often been cut with a similar faceting arrangement. Until Mr. Mardkha invented his cut, I am not aware of a diamond cut that contained that faceting arrangement. One did not have to be an expert in diamonds to conceive of such a cut. Indeed, it was perhaps because the larger part of Mr. Mardkha's background was in color gemstones that he was able to conceive of such a diamond cut in the first place.

_____
Douglas Weintraub

Sworn to before me this
15th day of June, 2006

_____
Notary Public

JEFFREY A. MITCHELL
Notary Public, State of New York
No. 02MI6054932
Qualified in Queens County
Commission Expires October 1, 2009

{00166930.DOC;2}